BELMIRA C. SOUSA, individually and as administratrix,[1] *vs.* THE TRAVELERS INDEMNITY CO. & another.[2] No. 88-P-592. May 5, 1989. *Insurance*, Motor vehicle insurance, Construction of policy.

On April 6, 1986, while driving his 1973 Volkswagen van, the defendant Cristiano Nunes struck and killed the plaintiff's decedent. At the time of

---

[1] Of the estate of Maria C. DeMello.

[2] Cristiano Nunes.

the accident Nunes also owned a 1977 Ford automobile. Both vehicles were insured by the defendant insurer (Travelers) under one automobile policy. The coverage selections page listed the coverage of each automobile separately; different vertical columns showed the amounts of coverage and the annual premiums for "Auto 1," the 1977 Ford, and for "Auto 2," the 1973 Volkswagen.

The columns which applied to the Ford and the separate ones for the Volkswagen showed the same amount of compulsory bodily injury insurance and the same premium for such coverage. The amount of coverage as to some items of optional insurance, however, varied between the two vehicles. Thus the coverage selection columns for the Ford showed greater coverage and higher premiums for damage to someone else's property and for optional bodily injury to others.[3]

The question on this appeal is whether the plaintiff may reach the higher optional bodily injury coverage on the Ford shown on the coverage selections page, namely, $100,000 per person, $300,000 per accident, as contrasted with the $10,000 per person and $20,000 per accident coverage shown on that page for the Volkswagen. On cross motions for summary judgment, a judge of the Superior Court allowed and entered a judgment declaring that the applicable liability coverage is that listed for Auto 2, the 1973 Volkswagen, on the coverage selections page of the policy. The requisite finding under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), was made. We affirm.

In order to reach the Ford's higher coverage, the plaintiff argues that the policy contains ambiguous language which must be construed against the insurer. She points to the following language in the part of the policy relating to optional bodily injury coverage (part 5):

> "The most we will pay for injuries to one or more persons as a result of bodily injury to any one person in any one accident is shown on the Coverage Selections Page as the 'per person' limit. Subject to this limit, the most we will pay for injuries to two or more people as the result of bodily injury to two or more people in any one accident is shown on the Coverage Selections Page as the 'per accident' limit. This is the most we will pay as the result of a single accident no matter how many autos or premiums are shown on the Coverage Selections Page."

We need not consider which rule of construction applies here[4] as we consider the terms of the policy to be unambiguous. The introductory para-

---

[3] The Ford also had coverage for collision, comprehensive, and substitute transportation, items not shown at all for the Volkswagen.

[4] Since the insurer had the option of issuing a single policy covering both vehicles or two separate policies, one covering each auto, the rule of construction generally looked to where language is controlled by the Commissioner of Insurance, see *Moore*

graphs of the policy request the purchaser to "check the Coverage Selections Page to make sure it correctly indicates the coverages you purchased. Each coverage you purchased will show a premium charge next to it. *If no premium charge is shown, you do not have that coverage*" (emphasis supplied).

Here ninety-nine dollars was paid for the optional bodily injury coverage on the Ford; only twelve dollars for the Volkswagen. The language quoted and relied on by the plaintiff (the anti-stacking provision)[5] says that it does not matter how many vehicles the policy covers; a person only has the coverage shown (for the applicable vehicle) on the Coverage Selections Page. The interpretation suggested by the plaintiff, that the coverage limits on the Ford apply to an accident involving the Volkswagen merely because the coverage limits for both vehicles appear on the same Coverage Selections Page, is not a reasonable one. See *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 41 (1986); *Jefferson Ins. Co.* v. *Holyoke*, 23 Mass. App. Ct. 472, 475 (1987). To read that page as the plaintiff urges would effectively negate its purpose of showing what coverage has been purchased and the premium charged therefor. As construed in their usual and ordinary sense, the limits shown and the premiums paid show separate and independent coverages for each of the two vehicles. The anti-stacking clause does not change that meaning.[6]

*Judgment affirmed.*

*David H. Waxler* for the plaintiff.
*James B. Ross* for Travelers Indemnity Company.

---

v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 1010, 1011 (1988), may not be applicable, and the basic rule that ambiguities in a policy are resolved against the insurer may apply. See *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 387 (1988).

[5] "Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages." *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 456 n.7 (1985), quoting from 12A M.S. Rhodes, Couch's Cyclopedia of Insurance Law § 45:651, at 207 (2d ed. rev. 1981). *Woodman* v. *Hartford Acc. & Indem. Co.*, ante 1120, 1121 n.2 (1989).

[6] Compare clause 15 of the "General Provisions and Exclusions" of the policy which provides coverage to an *insured* under the policy who is injured while a pedestrian or when using an auto other than "your auto." In that case "the most we will pay under any applicable Part is the *highest* limit shown for that Part for *any one auto* on your Coverage Selections Page." (Emphasis supplied).

