# FRAZIER ET AL. *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 387, September Term, 1970.]

*Decided May 12, 1971.*

116

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Emily M. Rody* and *Robert S. Rody* for appellants.

*H. George Meredith, Jr.,* and *William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Hymes, Keyes & Simmons* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

At about 9:45 on the evening of 4 July 1969, Kevin Frazier, then five years of age, was a passenger in the rear seat of an open Chevrolet convertible which was being driven by his mother, Cassandra Frazier, in a northerly direction on Jumper's Hole Road, in Anne Arundel County. According to Mrs. Frazier, an unidentified light blue car, going in the opposite direction, passed her and as it did, the driver of the car threw a lighted firecracker or cherry bomb into the rear seat of her car. Distracted by the explosion and by Kevin's cries, Mrs. Frazier lost control of her car and hit a tree. Both she and Kevin were injured. Pieces of a firecracker were later found near a scorched spot on the upholstery of the rear seat.

Kevin, Mrs. Frazier and Mr. Frazier filed petitions in the Circuit Court for Anne Arundel County, in which they sought leave to sue the Unsatisfied Claim and Judgment Fund Board (the Board). From an order denying their petition, they have appealed. The court below found as a fact that the petitioners had made the reasonable

efforts required by the Unsatisfied Claim and Judgment Fund Law, Code (1957, 1970 Repl. Vol.) Art. 66½, subtitle 7, part VI (the Act), § 7-620 (5) to ascertain the identity and driver of the unidentified vehicle, see *Johnson v. Unsatisfied Claim & Judgment Fund Board*, 262 Md. 90, 277 A. 2d 5 (1971), but concluded, as a matter of law, that the injuries sustained did not arise out of the ownership, maintenance and use of the unidentified car.

The Act, § 7-620 provides:

> "When the death of, or personal injury to, any person arises out of the ownership, maintenance or use of a motor vehicle in this State * * * but the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained * * * any qualified person who would have a cause of action against the operator or owner, or both, in respect to the death or personal injury * * * may * * * apply to a court of competent jurisdiction for an order permitting him to bring an action therefor against the Board * * *."

The question, of course, is whether the Fraziers' injuries arose "out of the ownership, maintenance or use of a motor vehicle." The same phrase is frequently encountered in automobile insurance policies, and the Board rests its hopes on *McDonald v. Great American Ins. Co.*, 224 F. Supp. 369 (R. I. 1963) and *Speziale v. Kohnke*, 194 So. 2d 485, *writ refused*, 250 La. 469, 196 So. 2d 534 (1967), both of which involved injuries sustained when firecrackers were thrown from automobiles, and both of which concluded that no coverage was afforded by the automobile insurance policy. Compare, *Richland Knox Mut. Ins. Co. v. Kallen*, 376 Fed. 2d 360 (6th Cir. 1967) where recovery was permitted under a homeowner's policy for injuries resulting from an unsuccessful attempt by a passenger to throw a firecracker out of

the car window. 8 Blashfield, *Automobile Law & Practice* § 317.1 at 5-6 (Lewis ed. 1966) ; 7 Appleman, *Insurance Law & Practice* § 4317 at 144-6 (1942) and an Annotation, 89 A.L.R.2d 150 would seem to support the proposition that whether an injury is or is not within the coverage provided by an automobile insurance policy may well turn on the question whether the use of an automobile is directly or merely incidentally causally connected with the injury, even though the automobile itself may not have proximately caused the injury. Compare, for example, *National Indemnity Co. v. Ewing*, 235 Md. 145, 200 A. 2d 680 (1964) (recovery allowed plaintiff, who fell from insured's car, and was injured while being escorted back to car on foot) and *Mullen v. Hartford Accident & Indemnity Co.*, 287 Mass. 262, 191 N. E. 394 (1934) (injury sustained from slipping on oil leaking from car held to be within provisions of policy) with *Commercial Union Ins. Co. of New York v. Hall*, 246 F. Supp. 64 (E.D. S.C. 1965) (no liability to plaintiff, whose way was blocked by insured's car and was then assaulted by insured) and *Kraus v. Allstate Ins. Co.*, 258 F. Supp. 407 (W.D. Pa. 1966), *aff'd* 379 F. 2d 443 (3d Cir. 1967) (insurer not liable to pedestrians' when insured detonated dynamite in his car).

We are reluctant to accept the notion that the gloss of judicial interpretation which may surround the provisions of the standard automobile insurance policy should necessarily be controlling in cases under our Unsatisfied Claim and Judgment Fund Law. We have noted that the Act is remedial in character, *Maddy v. Jones*, 230 Md. 172, 179, 186 A. 2d 482 (1962) and must be liberally construed, and while due regard must be given to the protection of the Fund, *Wheeler v. Unsatisfied Claim & Judgment Fund*, 259 Md. 232, 239, 269 A. 2d 593 (1970) ; *Hawks v. Gottschall*, 241 Md. 147, 215 A. 2d 745 (1966), in the interest of protecting the innocent victims whom the Act was intended to benefit, we are disposed to consider, but not necessarily to be bound by, decisions in-

volving the interpretation of insurance contracts. We conclude that for purposes of determining whether leave to sue the Board should have been granted, the injuries under the facts of this case did arise out of the ownership, operation or use of an unidentified motor vehicle.

In two recent cases, *State Farm Mut. Auto. Ins. Co. v. Treas,* 254 Md. 615, 255 A. 2d 296 (1969) and *Glens Falls Ins. Co. v. American Oil Co.,* 254 Md. 120, 254 A. 2d 658 (1969) we have been called on to decide whether an intentional injury by automobile, to a person, in the first case, or damage to property, in the second, comes within the policy language "caused by accident" and concluded that they did not. A logical consequence of the result reached in the first of these cases is that the unsuccessful claimant might have had a claim against the Fund, which does not bar recovery for intentional injury. The Board argues that in the case of an intentional personal injury, the responsible agency may now be the Criminal Injuries Compensation Board, established by Chapter 455 of the Laws of 1968, now Code (1957, 1966 Repl. Vol., 1970 Cum. Supp.) Art. 26A. The Criminal Injuries Compensation Act provides for financial assistance to the innocent victims of crime. That Act, in § 2 (c) defines a crime, and continues,

> "* * * provided, however, that no act involving the operation of a motor vehicle which results in injury shall constitute a crime for the purpose of this article unless the injuries were intentionally inflicted through the use of a vehicle."

Without deciding the question, and for the purpose of this opinion we need not, it would appear that what may have been contemplated by § 2 (c) was the situation in *Treas,* where the insured, who was the driver of the car which struck Mrs. Dawson in 1966, entered a plea of guilty to a charge of common law manslaughter. This was a case where the automobile was the direct and proximate cause of the injury, and coverage would have

been available under the insurance policy except for the fact that the injury was both intentional and foreseeable.

> *Order reversed, case remanded*
> *for entry of an order per-*
> *mitting appellants to bring*
> *an action against the Unsat-*
> *isfied Claim and Judgment*
> *Fund Board; costs to be paid*
> *by appellee.*