744 A.2d 578

**David WEBSTER, Personal Representative of the Estate of Catherine Elizabeth Webster, et al.**

v.

**GOVERNMENT EMPLOYEES INSURANCE CO.**

**No. 6294, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 2, 1999.

Reconsideration Denied Feb. 10, 2000.

Cynthia E. Young, Annapolis (David G. Whitworth, Jr., and Whitworth, Smith & Trunnell, P.A., Crofton, on the brief), for appellants.

Francis J. Ford (Ford & Chervenak, on the brief), Rockville, for appellee.

Argued before MOYLAN, SONNER and THOMAS J. BOLLINGER, (specially assigned), JJ.

SONNER, Judge.

This case is a civil appeal that followed the tragic murder of Catherine Elizabeth Webster by William D. Stewart during an attempted carjacking of an uninsured vehicle. Appellants, Webster's parents, brought suit against Government Employees Insurance Company (GEICO), appellee, under their car insurance policy's uninsured motorist provision. The Circuit Court for Prince George's County granted summary judgment to GEICO.[1] We affirm.

On the evening of March 20, 1995, Robert Beauchamp Saunders[2] and Larry LaPrad, Jr. talked Webster, who was 16 years old, into going to a pool hall without her parents' knowledge or permission. Saunders was driving his uninsured 1988 Nissan 300 ZX automobile.[3] LaPrad sat in the

1. There is no lower court opinion.

2. The Complaint incorrectly refers to Richard Saunders.

3. Although the record is unclear regarding whether Saunders's vehicle was uninsured, GEICO stipulated that the car was uninsured during oral argument.

front passenger seat and Webster sat in the rear of the car. When they arrived at the pool hall, they discovered it was closed. While still in the car in the parking lot, the carjacker, Stewart, ordered them out of the vehicle and showed them a handgun tucked in the waistband of his trousers. Saunders accelerated in an attempt to escape while Stewart fired his gun. One bullet only grazed Saunders, but two bullets hit Webster in the back of the head. She died the following day.

Stewart has been found guilty of carjacking, first degree murder, and other charges and received a sentence of life imprisonment plus thirty years.[4] Webster's parents sued Saunders and LaPrad for negligence in the Circuit Court for Prince George's County. The court dismissed the case, finding that the defendants had no legal duty to protect the decedent from a third party's criminal actions. Webster's parents did not appeal from that decision.

Webster's parents then sued their own insurance company, GEICO, when it refused to compensate them under its uninsured motorist provision. After the circuit court granted summary judgment to GEICO, the parents noted this appeal and contend that the lower court erred because appellee's motion for summary judgment did not address all aspects of appellants' Complaint. Specifically, appellants contend that two issues were not addressed in the summary judgment motion and, therefore, the entire case should not have been dismissed. First, appellants alleged that GEICO's uninsured motorist provision was void because it provides less coverage than Maryland law requires. Second, appellants argue that appellee's motion addressed only Saunders's involvement in Webster's death, without considering Stewart's wrongful acts. They argue that the uninsured motorist provision applies because of the wrongful actions of *both* Stewart and Saunders, not just Saunders alone.

---

**4.** The record in this case does not indicate the trial date or the court in which Stewart was tried and convicted of these charges.

**62**

Regarding the first issue, appellants contend that GEICO inserted the phrase, "legally entitled to recover as damages from the owner or driver of an insured vehicle,"[5] to provide less coverage than required by Maryland law. Specifically, appellants state that the applicable Maryland statute includes compensation to innocent victims of automobile mishaps as well as for wrongful death claims. Appellants claim that GEICO's insurance policy does not indicate coverage for either.

■ We agree with appellants that an insurer may not provide less than the statutorily required minimum coverage. *Nationwide Mutual Insurance Company v. United States Fidelity & Guaranty Co.*, 314 Md. 131, 135, 550 A.2d 69 (1988); *Harris v. Nationwide*, 117 Md.App. 1, 5, 699 A.2d 447 (1997). Here, however, GEICO's insurance policy mirrors that of the applicable statute almost identically. GEICO's policy states:

> We will pay damages for *bodily injury* and *property damage* caused by accident which the insured is **legally entitled to recover from the owner or operator of an uninsured motor vehicle** arising out of the ownership, maintenance or use of that vehicle.

*GEICO Family Automobile Ins. Pol'y*, at 17 (emphasis added).

The relevant portion of Maryland Uninsured Motorist Coverage statute states:

> (c) *Coverage required.*—In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:
>
> (1) the insured is **entitled to recover from the owner or operator of an uninsured motor vehicle** because of bodily

---

**5.** Appellants incorrectly quote GEICO's policy. As noted below, GEICO's policy actually states, "legally entitled to recover from the owner or operator of an uninsured motor vehicle."

injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle....

MD.CODE (1997), INSURANCE § 19–509 (emphasis added).

GEICO has not inserted any additional language to its policy to provide less coverage than required by Maryland law. Although Maryland case law has interpreted the uninsured motorist statute to encompass wrongful death claims as well as claims by innocent victims of some automobile accidents, GEICO's policy does not preclude these claims. *See Forbes v. Harleysville Mutual Insurance Co.*, 322 Md. 689, 698–701, 589 A.2d 944 (1991)(holding wrongful death claims caused by the negligence of an uninsured motorist are included in Maryland's uninsured motorist coverage); *Harris v. Nationwide*, 117 Md.App. 1, 18, 699 A.2d 447 (1997) (holding assault by an unidentified motorist is covered under uninsured motorist statute). On the contrary, GEICO's phrase "legally entitled to recover as damages from the owner or driver of an insured vehicle" encompasses all claims an insured is entitled to recover under Maryland law. Furthermore, contrary to appellants' argument, this issue was addressed in Appellee's Motion for Summary Judgment. *Def.'s Mem. in Supp. Summ J.*, at 2–3.

■ Regarding the second issue, appellants claim the term "operator" should be read broadly to include a carjacker exercising control over a vehicle. If Stewart's and Saunders's combined actions make them "operators" of the vehicle and Webster's death arose out of the ownership, maintenance, or use of the uninsured vehicle, appellants can recover under GEICO's uninsured motorist provision. Appellants argue that had Stewart and Saunders both been inside of the vehicle, fighting for control of the car, they would both be operators.

There is no authority for the proposition that an assailant who attempts to steal a car, and who remains outside the car at all times, is an operator of the vehicle. This case appears to be one of first impression in Maryland. There is no reported decision in Maryland that addresses whether an

insured person can recover under an uninsured motorist provision when injury or death arose from the attempted carjacking of an uninsured vehicle. Because there is no case directly on point and there are no statutes addressing the issue, we must attempt to determine whether the Maryland Legislature intended for the uninsured motorist provision to cover situations such as the one before us.

The Insurance article in the Maryland Code has been revised 23 times since it was first enacted in 1973. H.B. 1299 FLOOR REPORT, at 1 (1997). The Insurance Code recodification was enacted over the course of 1995, 1996, and 1997. *Id.* The Legislature's comprehensive insurance scheme regulating insurance does not include any indication that "operator" is meant to be read so broadly as to include carjackers. Legislative history also shows no indication that injuries or death resulting from carjackings are covered under the uninsured motorist provision. Having found no such legislative intent, we are restricted from extending the law to embrace those not physically within a car.

■ Appellants also claim the phrase, "arising out of the ownership, maintenance, or use of the uninsured motor vehicle," includes, or should include, a carjacking. We similarly cannot interpret the phrase, "arising out of the ownership, maintenance, or use of the uninsured motor vehicle," as broadly as appellants argue.

This Court recently considered the meaning of "arising out of the ownership, maintenance, or use of the uninsured motor vehicle" for purposes of uninsured motorist coverage in *Wright v. Allstate Ins. Co.*, 128 Md.App. 694, 740 A.2d 50 (1999). In *Wright,* an assailant waited in a parked car, got out of his car to shoot the driver and passenger in another car while they were at a stop sign, then returned to his car and drove away. This Court held that the injuries sustained did not arise out of the use of the vehicle, but rather an assault.

Other jurisdictions have held that injuries resulting from a carjacking or attempted carjacking do not arise from the use of the vehicle, but, instead, arise from physical assault. *See*

*Huston v. State Farm Mut. Auto. Ins. Co.,* 99 F.3d 132 (4th Cir.1996)(carjacking did not constitute "use" of a vehicle under Virginia's uninsured motorist statute); *Bourne v. Farmers Insurance Exchange,* 449 Mich. 193, 534 N.W.2d 491, 42 A.L.R.5th 953 (1995)(holding that injuries resulting from a carjacking did not arise out of the use of motor vehicle because the injury was a physical attack); *Uzcatequi–Gaymon v. N.J. Mfrs. Ins. Co.,* 193 N.J.Super. 71, 472 A.2d 163 (1984) (carjacking is not an "accident involving an automobile" under New Jersey's no-fault law) [6]; *see generally* Diane L. Schmauder, Annotation, *No–Fault Insurance Coverage for Injury or Death of Insured Occurring During Carjacking or Attempted Carjacking,* 42 A.L.R. 5th 727 (1996)(analyzing cases in which courts have considered whether injuries resulting from carjackings are covered by no-fault automobile insurance).

Although the Supreme Court of Oregon held that, for purposes of personal injury protection (PIP) coverage, the plaintiff's gunshot injury arose as a consequence of the use of a vehicle during a carjacking, the facts of this case are distinguishable. *See Carrigan v. State Farm Mutual Automobile Ins. Co.,* 326 Or. 97, 949 P.2d 705 (1997). In *Carrigan,* the carjacker was inside the car when he aimed a gun at the plaintiff. *Id.* at 99, 949 P.2d 705. After obtaining control of the vehicle, the carjacker ordered the plaintiff to get out of the car and then shot him before driving away. *Id.* at 99–100, 949 P.2d 705. In contrast, in this case, Stewart was never inside the car, never obtained control of the car, and, of course, never drove the car. Three judges dissented in *Carrigan* stating that a carjacker's intent to use a vehicle at issue "introduces a completely alien element into vehicle insurance coverage." *Id.* at 106, 949 P.2d 705. The dissenters stated:

---

**6.** The court stated: "Although decedent's assailants may have attempted to rob him of the keys to his car, there was an insufficient causal connection between the shot fired by his attackers and the automobile to consider the killing an accident involving an automobile within the meaning of [the no-fault law]." *Uzcatequi–Gaymon v. N.J. Mfrs. Ins. Co.,* 193 N.J.Super. 71, 75, 472 A.2d 163 (1984).

The majority's analysis is flawed in that it essentially treats any injury that might follow a carjacking as an injury that results from the use of a motor vehicle.... [T]hat approach, in effect, fashions a rule whereby the availability of PIP benefits to an insured is dependent upon the mental state of the criminal perpetrator.... [I]f the injury-causing perpetrator has the intent to steal (to "use") the insured's vehicle, any subsequent injury to the insured is within PIP coverage. Presumably, if the perpetrator had an intent other than theft of the insured's vehicle ... no coverage would exist. Reliance upon the intent of the perpetrator introduces a completely alien element into vehicle insurance coverage.... [T]he nexus between plaintiff's injury and the use of his vehicle simply is too attenuated to support the conclusion that plaintiff's injury resulted from the use of a motor vehicle....

*Id.* (Carson, C.J., dissenting).

Appellants rely on several other cases, all of which we must distinguish because each involved an assailant or tortfeasor who was a *driver*. For instance, in *McNeill v. Maryland Insurance Guaranty Ass'n*, 48 Md.App. 411, 427 A.2d 1056 (1981), the plaintiff was injured when his car battery exploded during an attempt to "jump-start" his vehicle. The *driver* of the other vehicle, which was being used to help McNeill jump-start his car, lit a match while observing the plaintiff, causing the explosion.[7] *Id.* at 412, 427 A.2d 1056. This Court held that McNeill's injuries were covered under the other automobile's insurance policy because the injury arose out of, or had its source in, the use or operation of the automobile. *Id.* at 418–20, 427 A.2d 1056.

In *Harris v. Nationwide*, 117 Md.App. 1, 699 A.2d 447 (1997), the plaintiff, a pedestrian, was injured when an unidentified *driver* grabbed the plaintiff's purse and dragged her 15 feet before speeding away. This Court held that the insured

---

**7.** Appellants mischaracterize the case by stating that the match was lit by a third party bystander who had no control over the vehicles whatsoever. *Appellants' Reply Br.,* at 2.

pedestrian was covered under her uninsured motorist provision because the assault arose out of the ownership, maintenance, or use of the thief's vehicle. *Id.* at 17–18, 699 A.2d 447.

In *Frazier v. Unsatisfied Claim & Judgment Fund Board,* 262 Md. 115, 277 A.2d 57 (1971), an unidentified *driver* threw a lighted firecracker or cherry bomb into the plaintiff's car. The Court of Appeals held that the plaintiffs were covered under the uninsured motorist provision because their injuries arose out of the ownership, maintenance, or use of a motor vehicle. *Id.* at 117–18, 277 A.2d 57. The Court of Appeals stated that the use of an automobile was directly, as opposed to merely incidentally, causally connected with the injuries. *Id.* at 117, 277 A.2d 57.

In this case, there was only one car and one driver—Saunders. The carjacker, Stewart, was neither physically inside nor in control of any vehicle. Furthermore, Webster's injuries were not causally connected to the use of an uninsured vehicle, but rather were caused by Stewart's assault. Therefore, injuries resulting from this attempted carjacking are not covered by the Maryland uninsured motorist provision.

**JUDGMENT AFFIRMED.**

**APPELLANTS TO PAY COSTS.**